TRUSCHEL v. DEAN.

Opinion delivered February 3, 1906.

1. SALES—IMPLIED WARRANTY.—In sales of goods where the buyer has had no opportunity to inspect them, there is an implied warranty that they are reasonably fit for the purposes for which they are ordinarily used; and when they are, under such circumstances, purchased for a particular purpose known to the seller, there is an implied warranty that they are fit for that purpose. (Page 549.)

2. SAME—IMPLIED WARRANTY ON MERCHANTABLE CONDITION.—Where a carload of grapes were purchased in another State for resale in this State, the buyer having no opportunity of inspection and selection, the seller will be held to have impliedly warranted that the grapes were in proper condition to stand shipment to this State by means of the transportation afforded, and to remain in merchantable condition, so that the buyer could resell them. (Page 549.)

3. SAME—INSTRUCTIONS.—The refusal of the court to instruct the jury, in the case of a carload of perishable goods purchased, without opportunity of inspection, in another State for resale in this, that the goods must have been in proper condition to stand shipment to this State and resale was not cured by giving an instruction to the effect that, in determining whether the goods were in merchantable condition when loaded into the car for shipment, the jury might consider the condition of the goods at the time of shipment, the length of time the goods

would keep when properly loaded, and from all the facts say whether the goods were in merchantable condition when loaded in the car. (Page 550.)

4. SAME—QUESTION FOR JURY.—Where, in the case of a carload shipment of grapes, bought for the purpose of resale without having been inspected by the buyer, there was evidence that the car was iced at the place of shipment, that instructions were given to keep it iced *en route,* that the car was properly iced on its arrival at the destination, and that the grapes were not in merchantable condition on their arrival, the jury might have inferred that the worthless condition of the grapes on arrival was due to their bad condition when shipped, rather than to a failure of the carrier to keep the car properly iced *en route.* (Page 550.)

Appeal from Sebastian Circuit Court, Fort Smith District; STYLES T. ROWE, Judge; reversed.

### STATEMENT BY THE COURT.

The plaintiff, Clyde Dean, of Portland, N. Y., commenced this action against the defendant, George Truschel, of Fort Smith, Ark., to recover $457.61 on open account for one carload of grapes sold and delivered on board car at Portland. The contract of sale was evidenced by two telegrams, the first from plaintiff to defendant quoting prices of grapes loaded on board cars at Portland, N. Y., and the second from defendant to plaintiff accepting the offer and ordering shipment.

The defendant set forth in his answer that the grapes were purchased for resale in Fort Smith, which fact the plaintiff well knew, and he accepted the order with that understanding; that there was an implied warranty on the part of the plaintiff that the grapes should, when shipped from Portland, be in proper condition to stand shipment to Fort Smith and reach the latter place in merchantable condition, so that defendant could have an opportunity to resell the same; that the same were not in such condition when shipped from Portland, but, by reason of being over-ripe, were unfit for shipment so as to reach Fort Smith in merchantable condition.

At the trial the defendant introduced testimony tending to show that when the car reached Fort Smith the grapes were mildewed, rotten and unfit for use, and that defendant refused to accept them. Also that the condition indicated that the grapes were either over-ripe or wet when they were loaded into the car at Portland; that, if they had not been wet or over-ripe when loaded,

and the car had been kept iced *en route,* they would have been in good condition upon arrival at Fort Smith. One witness, who examined the grapes on arrival at Fort Smith, said that the car was cool, and that he found ice in the bunkers.

It appears from other evidence that cars are provided for such shipments with ice bunkers, and that the bunkers must be filled with ice so that the car may be kept at the proper temperature throughout the journey. The bunkers of this car were filled at Portland, and instructions were written in the face of the way-bill to "ice this car heavily at Bellevue, O. Keep it iced to destination, and charge the expense on the property."

A witness for the plaintiff who inspected the grapes at Portland testified that they were, when loaded at Portland, in first-class condition, and would stand ten days' transit, and still be in prime condition if the car had been kept iced during transit.

The court gave the following instruction of its own motion over defendant's objection:

"4. In determining whether the grapes were in a merchantable condition when loaded into the car at Portland, New York, you should take into consideration the condition in which the grapes were when loaded into said car, the length of time merchantable grapes will keep when properly loaded into cars used for the purpose of carrying grapes, the length of time the grapes were in transit, the manner in which the grapes were loaded into said car, with all the facts and circumstances in evidence, and from all the facts and circumstances in evidence say whether the grapes were or were not in a merchantable condition when loaded in the car at Portland, New York."

And refused the following asked by defendant:

"Gentlemen of the jury, you are instructed that, under the contract as shown by the evidence in this case, the plaintiff was required to load into the car at Portland, N. Y., grapes which were in such condition as to bear shipment to Fort Smith, Ark., and be in merchantable condition upon arrival in Fort Smith, Arkansas; that is, the shipper must have in mind the time ordinarily consumed in the means of transit employed, and the fruit must be in such condition as, under the ordinary conditions, to reach the point of destination in merchantable condition. Now, if you find from the evidence that the grapes loaded into this car

were in proper condition to stand shipment to Fort Smith, Ark., and reach Fort Smith, Ark., in merchantable condition, your verdict should be for plaintiff; if not, your verdict should be for the defendant." The jury returned a verdict in favor of the plaintiff for the amount sued for, and the defendant appealed.

*Winchester & Martin,* for appellant.

The court erred in its instruction No. 4, and in refusing the instruction asked by appellant. There was an implied warranty by the seller that the grapes were in condition for shipment to destination and to arrive there under ordinary conditions in merchantable condition. 2 Schouler's Personal Property, § 343; 48 Ark. 330; Tiedeman, Sales, § 190; 72 Ark. 470; Benjamin on Sales, § 656.

*A. A. McDonald,* for appellee.

McCulloch, J., (after stating the facts.) In sales of goods where the purchaser has had no opportunity to inspect them, there is an implied warranty that they are reasonably fit for the purposes for which they are ordinarily used; and when they are, under such circumstances, purchased for a particular purpose known to the seller, there is an implied warranty that they are fit for that purpose. *Bunch* v. *Weil,* 72 Ark. 343; *Curtis & Co. Mfg. Co.* v. *Williams,* 48 Ark. 330; Benjamin on Sales, § § 645, 656; 2 Mechem on Sales, § 1358.

The facts of this case fall squarely within the rule stated. The grapes were purchased for resale in Fort Smith, and this purpose was known to the seller. Therefore, the seller impliedly warranted that the grapes were in proper condition to stand shipment to Fort Smith by the means of transportation afforded, and remain in a merchantable condition, so that the purchaser could have an opportunity to resell them. It could not have been in contemplation of the parties that fruit should be shipped which would be worthless when it reached Fort Smith, and, the seller only having had an opportunity of inspection and selection, he must be deemed to have warranted the fruit to be such as would, under the means of transportation afforded, reach Fort Smith in a salable condition.

The instruction asked by the defendant embodied this view of the law, and should have been given.

It is insisted by counsel for appellee that the instruction by the court of its own motion conveys the same idea, and that there is no substantial difference in meaning between that and the instruction asked by appellant. We do not think so. The court in this instruction said that, in determining whether the grapes were in merchantable condition when loaded into the car at Portland, the jury might consider the condition of the grapes at that time, the length of time grapes in such condition will keep when properly loaded, etc., but the court did not say that the grapes must have been in condition to stand shipment, and then be fit for sale at Fort Smith. The instruction, it is true, permitted the jury to consider the condition of the grapes when loaded on cars at Portland, the length of time grapes will under ordinary means of transit keep, the manner in which they were loaded, etc.; but only for the purpose of determining whether the grapes were in merchantable condition when loaded. The court should have gone further, and told the jury, as asked by defendant, that the test of merchantability in Portland was whether the condition of the grapes was such as to stand shipment to Fort Smith and reach the latter place in condition for sale. The instruction of the court, without the further definition contained in the refused instruction, was uncertain and misleading. The jury might well have understood from it that their sole duty was to determine whether the grapes were in salable condition when delivered to the carrier at Portland, and that the other matters recited in the instruction were to be considered only for the purpose of reaching a conclusion on that point.

It is contended that the refusal to give the instruction was not prejudicial, for the alleged reason that under the evidence the verdict must have been for the plaintiff any way. It is true that a witness for plaintiff testified that the grapes when loaded at Portland were in proper condition to stand shipment to Fort Smith and reach there in salable condition, if the car was kept thoroughly iced, and no accident occurred in transit. This was not contradicted by direct evidence, and there was no direct testimony as to whether the car was iced after it left Portland. But it was shown that the car was iced at Portland, and instructions given to ice it again at Bellevue, O., and to keep it heavily iced *en route;* that the car in due time reached Fort Smith at a proper

temperature and with ice in the bunkers; and that the grapes were in such poor condition that they could not, if the car was kept iced, have been in proper condition when loaded at Portland. At least, a witness of experience in handling fruit testified to that effect, and gave it as his opinion that, from the condition he found it in after arrival at Fort Smith, it could not, if the car was kept iced, have been in proper condition when loaded. The jury might have inferred from these facts that the fruit was not in proper condition to stand shipment, and that there was a breach of the warranty in that regard. Notwithstanding there was no direct proof that the ice bunkers of the car were filled *en route,* the jury might have inferred, from the fact that they were filled at the start, and that instructions were given to the carrier to refill them and keep them full, and that the car reached Fort Smith in due time at proper temperature and with ice in the bunkers, that the worthless condition of the grapes was due to the fact that they were not in good condition when shipped, rather than to some accident or failure to keep the car properly iced *en route.* Appellant was, therefore, entitled to have the question submitted to the jury upon proper instructions.

Reversed and remanded for new trial.